15398

BURNETT v. SNODDY ET AL.

(19 S. E. (2d), 904)

October, 1939.

That part of Judge Gaston's order required to be reported, follows:

The plaintiff sues as a creditor of the estate of J. R. Snoddy, Sr., deceased, to enforce payment of a judgment for $2,216.75, recovered by her against the executors of the estate in another suit. The plaintiff brings this action for the benefit of herself and all other creditors of the estate to sell certain real estate in aid of assets.

The only real estate sought to be sold under the allegations of the complaint is expressly described therein as follows: "All that tract or parcel of land in the county and state aforesaid, containing three hundred and four (304) acres, more or less, known as lot 'B' as shown on plat of H. Stribling, civil engineer, made November, 1920, and amended April 30th, 1930, the same to be herewith recorded; said tract being bounded by Tucapau Mills, L. N. McMillin, L. C. McMillin, J. S. Wingo, and Dr. Sam Orr Black."

The complaint further alleges in Paragraph Eight that the personal property and also a tract of 135 acres is insuf-

ficient to pay debts, and plaintiff, on behalf of herself and other creditors, has made demand on the executors for the sale of the tract of 304 acres described in the deed to Harry Snoddy, set out in Paragraph Six, and the executors have refused to take any steps for sale of the said land and have themselves entered into occupancy and possession of the same.

The complaint alleges further, "Upon the death of Harry Snoddy in September, 1938, without heirs of his body, title in him failed under the terms of the limitation to him 'and heirs of his body' and reverted to the donor and is charged with payment of his debts"; "Wherefore, plaintiff prays judgment that the real estate described be sold, and proceeds applied to payment of the testator's debts, and for such other relief as may be proper."

It will, therefore, be seen that the complaint does not attack the validity of the deed to Harry Snoddy. This is not a suit to set aside such deed.

The deed is fully set out in Paragraph Six of the complaint and need not be repeated or copied *in extenso* here. The deed reserves a life estate to the grantor, Jas. R. Snoddy, Sr., who is now deceased, and whose estate is now indebted to the plaintiff.

The deed conveys the 304 acres to "Harry Snoddy, and the heirs of his body." It creates and conveys a fee-conditional estate to Harry Snoddy, who died unmarried and intestate on September —, 1938. The deed in question is dated December 8, 1931, and was recorded December 5, 1932, about one year later.

J. R. Snoddy died July 2, 1935, and left a will dated May 14, 1930. The will is set forth in full in the complaint. It is evident that the land in question passes under the deed, which was executed, delivered and recorded before the will took effect, unless the will disposes of the reversion. On December 5, 1932, J. R. Snoddy also recorded several deeds, all dated December 8, 1931, and they conveyed to his three children all of his real estate, except a tract of 135 acres.

His son, S. M. Snoddy, and his son, J. R. Snoddy, Jr., were then both married, and each had several children. His son, Harry Snoddy, was at the time a bachelor, forty-seven (47) years of age, and later died unmarried and left no issue of his body.

No attack is made in the suit upon the validity of the several deeds, nor either one of them.

The foregoing facts are alleged in the complaint. The theory of the complaint is that upon the death of Harry Snoddy in September, 1938, without heirs of his body, title in him failed under the terms of the limitation to him "and heirs of his body," and reverted to the donor and is charged with payment of his debts.

The demurrer denies the foregoing legal conclusion. The grounds of the demurrer are stated thus:

"That the above allegation is an erroneous conclusion of law because the whole estate in said lands was vested in Harry Snoddy in fee conditional and no estate was left in the grantor. There was only a mere possibility of reverter in J. R. Snoddy, Sr. Such possibility of reverter was not an estate and was neither a present or future right and could not be devised, transmitted, or conveyed by J. R. Snoddy, Sr., and there was nothing to inherit from J. R. Snoddy, Sr.

"That it appears from the face of the Complaint that the next of kin of J. R. Snoddy, Sr., who were in existence at the time of the death of Harry Snoddy, took a fee simple title to said lands.

"That it appears, therefore, that J. R. Snoddy, Jr., and Sam M. Snoddy were the only two heirs at law of J. R. Snoddy, Sr., who were living at the time of the death of Harry Snoddy, and are, therefore, the owners of said land.

"That it appears from the facts stated in the Complaint that there was no reversion in said lands to J. R. Snoddy, Sr., and that the debts of his estate are not a charge on said lands."

The argument and contention of the plaintiff is that Harry Snoddy took by deed a fee-conditional estate in and to the

land; that upon his death the land reverted to the donor; that the will of J. R. Snoddy not only devised this land by way of residuary clause but specifically authorized his executors to sell the same at public or private sale. Plaintiff contends "That under the rule of *Barbot v. Thompson,* 94 S. C., 3, 77 S. E., 716, for the purposes of administering the estate, title was vested in the executors."

Plaintiff further says: "It is argued that J. R. Snoddy, after making the deed to Harry Snoddy, had no right, title or interest in the property, and because the possibility of reverter was not realized until after his death, his estate could have no interest; however, those who now claim title, S. M. Snoddy and J. R. Snoddy, Jr., of necessity acquired their title from some source, and their only claim of title is from J. R. Snoddy, Sr. If this interest was not acquired by the will, then their only claim is by inheritance."

I think that a brief review of the cases relied upon by the plaintiff will better enable the Court now to determine just how far the decisions of this State sustain or relate to the theory of the complaint, or fail to do so.

The latest case relied upon by the plaintiff is *Dukes v. Shuler,* 185 S. C., 303, 194 S. E., 817, 818. The *Dukes v. Shuler case* relates to the construction under a will of the intention of the testatrix and the meaning of the words used, of "his surviving brother and sister." "It is provided in the will that upon the death of Peter Frederick Shuler without lawful living heirs [the issues of his body], the lands devised are to be 'divided between the surviving brother and sister,' etc." So that this instrument, that is, the will in question, not only created a fee-conditional estate in the first taker, Peter, but also disposed of the reverter by executory devise. In other words, where a fee-conditional estate is devised, the estate reverts to the donor, upon failure of the particular class of heirs designated. Mr. Justice Fishburne fully classifies this rule of law and the nature and effect of the law, in a case where a fee-conditional estate failed and terminated, and where the vesting and perfection of such an estate in the

first taker was never performed. I think it is impossible to find a clearer statement of the law. The only difficulty in the case at bar is to know what becomes of the possibility of reverter where the donor does not by the deed or will creating the fee-conditional estate, dispose of the possibility of reverter to the donor in the land. "A fee conditional during its continuance is the entire fee-simple estate, *Adams v. Chaplin,* 1 Hill Eq., 265, 278, and is as fit a subject for executory devise as a fee absolute." *Dukes v. Shuler, supra,* 194 S. E., at page 821.

But in the case at bar the deed which created the fee-conditional estate could not mount a fee on a fee nor otherwise dispose of the possibility of reverter. I think, therefore, that the only issue now to be decided is what becomes of the possibility of reverter. Does it vest in the estate of the donor, to be administered and sold as an asset of his estate to pay his debts? No case directly in point has been cited by counsel on either side.

The defendants' attorneys herein refer to the case of *James v. James,* 189 S. C., 414, 1 S. E. (2d), 494, 495. The *James case* holds that the deed of one Mary A. L. James to George W. James, "and his lawful children," conveyed a fee-conditional title to George, who had no children. So that upon the death of George, the Court held that the estate reverted "to those persons then in existence constituting the heirs at law of Mary A. L. James, deceased."

These two very late cases, above referred to, of *Dukes v. Shuler,* and *James v. James,* do not decide the point now before the Court. The *James case* refers to a deed and holds that the heirs at law of the grantor take the land by reason of the possibility of reverter, who are in existence at the time the first taker of the fee-conditional estate dies without heirs of his body.

Still the question confronts us, what rights, if any, have creditors of the grantor, then dead, to the land by reason of the possibility of reverter. It seems clear to me that the land never reverted to the grantor because

he was then dead. But the land reverted to the heirs at law of the grantor.

> In the case of *Adams v. Chaplin, supra,* 1 Hill Eq., ■ at pages 277, 280, the Court, in discussing a fee conditional, says,

"This brings us to enquire, what is the possibility of reverter? Is it an estate? I think not. For it has nothing like an estate about it.—It is neither a present nor future right. It is a mere possibility,—Upon the happening of a condition the right may arise; but until then it is nothing but the mere remembrance of a condition upon which a present estate may be defeated, and a *future one arise* in any one who may be *in esse* and claim as heir to the donor. * * *

"The person to whom the fee conditional is to be surrendered, has no immediate estate either in reversion or remainder. For whatever may be his interest, it is only to take effect and *commence after* the death of the tenant in fee conditional without issue. * * *

"The possibility of reverter is this mere floating right of possibility.—It cannot be any thing with which an estate can unite. * * *

"We have seen that it is no estate, and unless it is, it *cannot be inherited.*"

The case of *Vaughan v. Lanford,* 81 S. C., 282, 285, 317, 62 S. E., 316, 128 Am. St. Rep., 912, 16 Ann. Cas., 91, is in point.

In said case lands were conveyed by Wm. Jones to his daughter, Eliza Jones, "and the lawful heirs of her body." Eliza Jones conveyed said lands to E. L. Lanford and later died without having had heirs of his body. In a contest between the heirs of Wm. Jones and E. L. Lanford, the Court through Mr. Justice C. A. Woods says: "We do not understand any question to be made that, under the deed from her father, Eliza Jones took a fee conditional. The defendants contend, however, that William Jones, the grantor, by his will made after the conveyance to Eliza, devised to her the reversion as a part of his residuary estate, or if not that,

the will shows that he had previously released the reversion to her, or, at least, that he did not intend the plaintiffs should have the reversion or any other interest in his estate. It is clear from the will that the testator meant to dispose of all the property then in his possession, each item of which he mentions; but it is equally clear, from the fact that he makes mention of the several items, and saying they constituted all the property he possessed, and making no reference to the reverter, that he did not have in mind, and did not intend, to atttempt to devise the possibility of reverter created by his deed to Eliza. The possibility of a reverter, after the termination of a fee conditional, being a mere possibility, is not an estate. It is thus described in *Blount v. Walker,* 31 S. C. [13], 27, 9 S. E., 804: 'It is neither a present nor a future right, but a mere possibility that a right may arise upon the happening of a contingency, which is not the subject of either devise or inheritance. This is because the grant or devise of a fee conditional passes the whole estate to the tenant in fee, leaving nothing in the grantor or devisor which can be the subject of devise or inheritance; and hence it is settled that, upon the termination of such an estate, it goes to those who can bring themselves into the class of heirs of the person creating the estate at the time when the estate terminates, and not to those who were heirs at the time of the death of such person.' *Adams v. Chaplin,* 1 Hill Eq., 265; *Deas v. Horry,* 2 Hill Eq., 244; *Pearse v. Killian,* McMul. Eq., 231. In the case last cited the court, through Chancellor Harper, holds that he who would be entitled to the estate, if the fee conditional should presently determine, cannot devise or convey it; yet he may release it to the tenant in fee conditional, so as to make his estate an absolute fee simple. We are inclined, however, to the opinion that such a release could not be made effective by will, for the reason that a will could have no legal effect until the death of the testator; and at the moment of death the possibility of reverter passes from the testator, and beyond his control, to his heir."

The same reasoning was upheld in the case of *Corley v. Hoyt,* 116 S. C., 110, 107 S. E., 34, wherein Matthew Mc-Graw conveyed land "to his niece, Laura A. Ready, and the heirs of her body." Mrs. Ready died without such heirs. The Court, speaking through Mr. Justice Fraser, at page 34 of 116 S. C., at page 34 of 107 S. E., says:

"The first question in determining who shall take is, Do you reckon from the date of the deed, or from the death of Mrs. Ready, when the land reverted?

"Judge Shipp was right when he held that those took who were the next of kin at the time of the death of Mrs. Ready. See *Blount v. Walker,* 31 S. C. [13], 27, 9 S. E., 804. This was not the creation of a life estate with remainder. The estate created a fee conditional. The whole estate was gone from Matthew McGraw, and there was nothing to inherit until the death of Mrs. Ready."

J. R. Snoddy, Sr., having predeceased his son and grantee, Harry Snoddy, there could be no reverter to him. J. R. Snoddy, Jr., and Sam M. Snoddy were, therefore, the only class of heirs of the grantor in existence at the time of the death of their brother, Harry Snoddy, and took a fee simple to said lands.

The demurrer is, therefore, sustained and the complaint dismissed.

*Mr. Jesse Boyd,* of Spartanburg, S. C., for appellant,

*Messrs. Whiteside & Taylor* and *Messrs. Perrin & Tinsley,* all of Spartanburg, S. C., for respondents,

408

April 15, 1942.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM:

The action in this case was commenced in the Court of Common Pleas for Spartanburg County by service of the summons and complaint of the plaintiff, Nannie M. Burnett, upon the above-named defendants-respondents, on September 14, 1939. The complaint is a creditor's bill, and seeks to subject to the payment of the plaintiff's judgment certain real estate which had been held by one Harry Snoddy, until his death, under a fee-conditional estate which he had acquired by deed from his father, J. R. Snoddy. The fee-conditional estate terminated upon the death of Harry Snoddy, in September, 1938, he being a bachelor without heirs of his body. The plaintiff's judgment was acquired against the executors of the estate of J. R. Snoddy, some years after the fee-conditional estate had been created in favor of Harry Snoddy. The action in this case is based upon the theory that upon the termination of the fee conditional in Harry Snoddy, the land reverted to the estate of the donor, J. R. Snoddy, the judgment debtor, and would thus be charged with the payment of his debts.

The defendants-respondents demurred on the ground that, under the allegations of the complaint, the plaintiff's conclusion of law was erroneous in that the whole estate in the land was vested in Harry Snoddy in fee conditional, and that no estate was left in J. R. Snoddy, there being only a mere possibility of reverter which was not an estate and was neither a present nor a future right, and could not be devised, transmitted or conveyed by J. R. Snoddy, from whom there was nothing to inherit. The demurrer alleged further that

the complaint shows that at the time of the death of Harry Snoddy, the only living heirs at law of the original donor were J. R. Snoddy, Jr., and Sam M. Snoddy, and that such heirs at law of the original donor took a fee-simple title in the land upon the death of Harry Snoddy, thus eliminating any reversion to the estate of the donor, and eliminating the land from the charge of the debts of the donor, J. R. Snoddy.

The demurrer was heard by the Honorable A. L. Gaston, presiding Judge who, on February 1, 1940, in an able and comprehensive order which sets forth the salient facts and arguments, and the controlling law and authorities, decreed that the demurrer ·be sustained. From this order the case comes before us upon exceptions which raise the following questions as stated by the appellant:

"1. Does real property conveyed by voluntary deed in fee conditional revert to the donor's estate upon death of the holder of the fee conditional after the death of the donor?

"2. Does the Complaint state a cause of action to set aside voluntary deed as to creditors?"

The writer of this opinion has for many years held the belief that when a fee-conditional estate terminates as a result of the failure of the particular class of heirs designated, the estate reverted to the donor or to the donor's estate. But upon a thorough consideration of the sound reasoning of the learned Circuit Judge, and of the uncontrovertible authorities upon which he relies, the correctness of his determination of this issue is inescapable.

It is true that in the ·case of *Lucas v. Shumpert et al.,* 192 S. C., 208, at page 211, 6 S. E. (2d), 17, at page 18, this Court said: "The only issue submitted to the Circuit Court, and the only question presented here on appeal is, Did the four daughters named in paragraph three of the will of John F. Shumpert take a fee simple conditional estate in the lands therein devised, *with the reversion to the estate of the testator upon failure of issue born*; or did they take a fee conditional with a limitation over by way of executory

devise to their bodily issue surviving them, thereby entitling the appellant and the defendant, Boyd Berry, the only survivors, exclusively to all of the land?" (Emphasis added.)

It would appear from the italicized portion above quoted that this Court thus implied that if the four daughters of John F. Shumpert took a fee-conditional estate in the lands devised to them, that upon the failure of issue born the land would revert to the estate of the testator. However, in that case there was no such question, as is presented here, as to distinguishing between the legal effect of a taking by the heirs at law by inheritance from the donor, and a taking by such of the donor's heirs at law as were living upon the termination of the fee-conditional estate. In the quoted case, the question was whether the parties held a fee-conditional estate or a fee conditional with a limitation over by way of executory devise. Since the all-important question in this case was not even raised in the case of *Lucas v. Shumpert, supra,* the following italicized part of the opinion in that case, at page 215 of 192 S. C., at page 20 of 6 S. E. (2d), cannot be considered as a controlling authority in the present case: " * * * Since the daughters other than Sarah Ann E. Berry died without having had issue, *the property set off to them reverted to the estate of the testator.*" (Emphasis added.)

Since the question in the present case did not there exist, and was not under consideration, the foregoing italicized phrase can scarcely be regarded as more than incidental language, insofar as it provides authority in the case at bar.

We are confronted with a similar situation in the very recent case of *Bonds et al. v. Hutchison et al.,* 199 S. C., 197, 18 S. E. (2d), 663, decided by this Court since the date of Judge Gaston's order, and since the briefs in the present case were prepared. In that decision it was stated: " * * * If a fee conditional estate is created and there is a failure of the particular class of heirs designated, the estate reverts to the person or the estate of the party creating the fee conditional estate."

But here, again, the facts of the case and the question involved are utterly different from those now before us, and the language used in that case must be considered in the light of its subject-matter. In that case the will, under which the devisee took, contained the following provision with reference to the tract of land involved therein: " * * * If he dies without bodily heirs, the same to revert back to and become the property of my estate and to be disposed of as set forth in the last clause of Section 2 of this my last will and testament."

The clause adverted to reads " * * * In case any of them die without children, then such share is to revert back to, and become a part of my estate and is to be equally divided between my surviving children upon the same terms and conditions expressed above."

In the present case the donor made no such provision, and therefore the language which we have quoted from the opinion in the *Bonds case, supra,* cannot be controlling in this case in which the donor did not provide that the specified land should revert to his estate.

The order of Judge Gaston clearly defines and analyzes the force and effect of a deed conveying a fee-conditional estate in real estate, which is the main legal issue presented by this appeal, and his order will therefore be reported herein, except the first two paragraphs which will not be necessary here.

Appellant's second ground of appeal was not argued, either by counsel for appellant or for the respondents, at the hearing before this Court, and is touched upon only briefly in the appellant's printed argument.

In view of the allegations of the complaint that the deed under consideration was dated December 8, 1931, and recorded December 5, 1932, at the instance of the grantor, J. R. Snoddy, and that the plaintiff's judgment against his executors was not recovered until August 6, 1938, nearly six years after the recording of the deed, and construing the complaint as a whole, we cannot find any

merit in the contention that the complaint states a cause of action to set aside a voluntary deed as to creditors.

The ruling of the Circuit Court is sustained and the appeal dismissed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES, and CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE, concur.